**LOW v. SUTHERLIN, BARRY & CO., Inc., et al.**

**No. 6173.**

Circuit Court of Appeals, Ninth Circuit.

Feb. 16, 1931.

See, also, 35 F.(2d) 443.

Ewell D. Moore and D. A. Knapp, both of Los Angeles, Cal., for appellant.

Joseph L. Lewinson, Royal Martineau, and Warren Stratton, all of Los Angeles, Cal., for appellees.

Before RUDKIN and WILBUR, Circuit Judges, and SAWTELLE, District Judge.

RUDKIN, Circuit Judge.

April 22, 1925, Grace E. Low and Charles H. Low, her husband, entered into a written contract with Sutherlin, Barry & Co., Inc., wherein the Lows agreed to issue first mortgage bonds in the sum of $295,000, secured by mortgage or deed of trust on certain real property situate in the city of Los Angeles, and Sutherlin, Barry & Co. agreed to purchase the bonds so issued at 90 per cent. of their par or face value, plus accrued interest. Further details of this contract are not deemed material, nor is the fact that subsequent agreements relating to the bond issue were signed by the wife alone, or the fact that she was the sole party plaintiff in this action.

By a supplemental contract dated June 29, 1925, the amount of the proposed bond issue was increased to $360,000, and certain real property in the city of Venice was added to the mortgage security. On the latter date Mrs. Low signed an agreement wherein she agreed to pay the sum of $5,900 as commissions to certain persons or firms therein named, and authorized Sutherlin, Barry & Co. to deduct the amount from the proceeds of the bond issue. August 1, 1925, a trust deed was executed by Mrs. Low to secure the bond issue of $360,000, covering the Los Angeles and Venice properties, and the bonds were purchased by Sutherlin, Barry & Co. as agreed. December 23, 1925, Sutherlin, Barry & Co. notified Mrs. Low that, unless certain insurance premiums were immediately paid to reimburse the trustee named in the trust deed, it would at once elect to request the trustee to declare the entire principal sum of the bond issue due and payable, and would take further steps appropriate in the premises. The premiums were not paid as re-

quested, and thereafter, on March 1, 1926, the trustee, pursuant to the demand of Sutherlin, Barry & Co., served written notice on Mrs. Low, declaring her in default under the terms of the trust deed, and further declaring the entire principal of the bond issue immediately due and payable. Soon thereafter notice was given that the property would be sold on May 26, 1926, under the provisions of the trust deed. The sale was postponed at the request of Mrs. Low until June 1, 1926, and again until June 8, 1926. On June 4, 1926, a further agreement was entered into between Mrs. Low and Sutherlin, Barry & Co., wherein it was agreed that the sale would be further postponed until August 1, 1926, upon the performance of certain conditions by Mrs. Low, and that, if such conditions were duly performed, there would be a further postponement until October 6, 1926. June 8, 1926, the sale was postponed to August 1, 1926, and again until August 12, 1926. On the latter date, the conditions upon which the sale was to be postponed until October 6 not having been complied with, the property was sold by the trustee, pursuant to the terms of the trust deed, and Sutherlin, Barry & Co. became the purchaser for the sum of $292,500. The present action was thereafter commenced by Mrs. Low against Sutherlin, Barry & Co., Inc., and John E. Sutherlin, its president, to recover the difference between the alleged value of the mortgaged property and the amount received by the plaintiff on account of the bond issue, on the ground of fraud in the transactions leading up to the execution of the trust deed and the subsequent sale thereunder. The court below sustained a demurrer to the amended complaint without leave to amend, and from the judgment of dismissal the present appeal was prosecuted.

The facts as above set forth are taken from the amended complaint and the exhibits thereto attached. Concerning them there is no room for dispute or controversy. The amended complaint covers twenty-three pages of the printed record, so that any attempt on our part to set forth even its substance would unduly prolong the opinion without benefit to the parties or to the profession at large. Suffice it to say that, if the appellant was not bound by the trust deed and other agreements freely and voluntarily executed by her, the general charges of fraud found in the amended complaint afford no basis whatever for relief, either at law or in equity. To summarize briefly the more important allegations, the complaint begins with a broadside charge that the appellees, through

the appellee Sutherlin, with the intent and purpose of developing and perfecting a scheme whereby appellant would be wrongfully deprived of her property, began and continued a series of steps thereinafter set forth. It is not contended that this general allegation, standing alone, charges actionable fraud. The principal allegation relating to the competency or capacity of the appellant is that she was so greatly troubled by the physical collapse of her husband that she was not possessed of even her normal ability to grasp, understand, and appreciate the figures and statements presented to her. The legal insufficiency of such an allegation to warrant a court in setting aside or disregarding solemn written contracts is too plain to require discussion.

It was next alleged that the appellees prepared a so-called set-up, exhibiting on the one side the estimated income from the Los Angeles property, projected over a term of years, and on the other side the charges, expenses, fees, costs, and interest and other payments necessary to pay off and retire the bond issue at the end of fifteen years; that said set-up purported to show that the appellant could safely enter into the proposal submitted by the appellees and pay off all obligations she would assume thereunder; that the appellee Sutherlin falsely and fraudulently stated and represented that, by reason of their wide experience in the finance and bond business, they could guarantee the truth and accuracy of the set-up, and particularly that it contained all the charges, expenses, fees, payments, and costs appellant would be called on to bear or pay in the transaction; that the money derived from the sale of the bonds would be sufficient for all requirements of the transaction, and provide a large sum additional, which the appellant would be required to use for renovating and refurnishing the Los Angeles property in order that it might earn the income estimated in the set-up; that the appellees well knew that in truth and in fact there would be charges and expenses against the appellant other than, and in addition to, the charges, expenses, costs, interest, and payments which the appellees had estimated in the set-up; that the set-up consisted of a series of figures and pencil memoranda on scratch paper; that the appellee at no time had possession of the set-up or a copy thereof; that by reason thereof she was unable to be more definite and certain in regard thereto, except that the income from the Los Angeles property, as projected and stated by the appellees in the set-up, was greatly in excess of the income

theretofore derived therefrom, and that the outlay required by the appellees in order that the appellant might safely enter into the contemplated bond issue was greatly in excess of the amount represented in the set-up; that the statements and representations as to income and outlay made by the appellee Sutherlin, for himself and for his coappellee, as contained in the set-up, were false and untrue; that appellant did not know such statements and representations were false and untrue; that the appellee Sutherlin knew that appellant did not, and in her mental condition could not, comprehend and appreciate the import and effect of the set-up and the oral statements and representations based thereon, or determine the truth thereof; that the appellant in good faith relied and acted on such false and fraudulent representations, and, but for her reliance thereon, would not have continued further in such negotiations; that the appellees well knew that there would not be any sum remaining after paying the charges and expenses aforesaid for the use of the appellant, or to renovate or refurnish the Los Angeles property; that the appellees made the statements and representations to the appellant, with the intent and for the purpose of deceiving and misleading her and inducing her to enter into such transaction; and that the appellant, in reliance thereon, agreed to continue the negotiations with the appellees on the basis of such representations and set-up. It will be observed that the only item on one side of the set-up was the income from the mortgaged property, and the amount of that income was presumably known to the appellant, and probably to her alone. In this connection, it might not be amiss to point out by way of illustration that in the original complaint appellant averred that the income from the Los Angeles and Venice properties was, on June 25, 1925, and would thereafter continue to be, the sum of $50,000 per year. On the other side of the set-up was, presumably, the amount received from the bond issue, or 90 per cent. of $360,000. From this was to be deducted the indebtedness of the appellant, the amount of which was presumably known to her, and to her alone. The amount to be paid on account of the bond issue was specifically set forth, year by year, in the agreement of June 29, 1925, and in the trust deed itself. To this extent, at least, the set-up was a simple affair, and could mislead or deceive no one. Beyond this the amended complaint utterly fails to allege that a single item on either side of the set-up was wrongfully included or wrongfully omitted,

unless the appellant had in mind the item for insurance premiums and the item of $5,900, to which reference will be made later.

It is further averred that, prior to the execution of the agreement of June 29, 1925, the appellant directed the attention of the appellee Sutherlin to the fact that the insurance requirements contained in the agreement appeared to be in excess of the requirements of the set-up; that the appellee Sutherlin thereupon falsely and fraudulently represented to the appellant that the insurance then in force and then paid for by the appellant upon all of her properties would be sufficient to meet the requirements of the contract, and that there would be no necessity for further insurance thereon, except in a small amount, the cost of which would be paid out of the excess from the sale of the bonds, over and above other costs, expenses, and payments provided for in the trust deed, and that such additional cost would be merely nominal. It will thus be observed that the appellant executed the agreement of June 29, 1925, and the trust deed with full knowledge of the fact that the insurance requirements were greater than those estimated by the appellees prior to the time the contracts were entered into. She thus knowingly signed the two contracts with full knowledge of their contents, and is now in no position to reject or question them.

It is again averred that on June 29, 1925, the appellees demanded of the appellant the payment of the sum of $5,900, referred to in the agreement of that date, and threatened to withdraw from further negotiations unless such demand was complied with; that the appellant, having incurred heavy costs, expenses, charges, and fees, and for other reasons unnecessary to enlarge upon, was obliged to and did accede to the demand of the appellees, and did sign and execute the agreement as requested. There is no claim that the appellant did not in fact owe this amount, nor can the right of the appellees to withdraw from further negotiations, unless some provision was made for its payment, be questioned. There was therefore no legal duress and no conceivable reason why the agreement signed and executed should not be obligatory upon her.

Some reference is made in the brief to a fiduciary relation existing between the parties; but we find nothing in the case beyond the ordinary relation of borrower and lender.

The sustaining of the demurrer without leave to amend is assigned as error; but we do not understand counsel to complain of the refusal of leave to amend if the demurrer was properly sustained. In any event, no application for leave to amend was made in the court below.

We have thus considered the more important averments of the amended complaint, and are clearly of opinion that the appeal is without substantial merit. The judgment is therefore affirmed.